IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| ELIZABETH (N.) S., | CV 23-81-H-KLD |
| Plaintiff, | |
| vs. | ORDER |
| ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq.

## I.    <u>Procedural Background</u>

Plaintiff protectively filed an application for supplemental security income benefits on June 1, 2020, alleging disability since October 1, 2016, based on physical and mental impairments. (Doc. 8, at 265-74, 303). Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. (Doc. 8 at 102-15, 122-44, 150-57, 160-69. The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision dated February

20, 2023, the agency's final decision for purposes of judicial review. (Doc. 8 at 6-9). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.    Legal Standards

### A.    Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability

determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)

(quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

### B.    Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant

bears the burden of proving that (1) she suffers from a medically determinable

physical or mental impairment that has lasted or can be expected to last for a

continuous period of twelve months or more; and (2) the impairment renders the

claimant incapable of performing past relevant work or any other substantial

gainful employment that exists in the national economy. 42 U.S.C.

§§ 423(d)(1)(A), 423(d)(2)(A). *See also Batson v. Commissioner of Soc. Sec.

Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a

five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a

claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not

proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The

claimant bears the burden of establishing disability at steps one through four of this

process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in

substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If

so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three. At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, she must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation processes.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to

establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III.   **Discussion**

The ALJ followed the five-step sequential process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her June 1, 2020, application date. (Doc. 8 at 104). At step two, the ALJ found that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease (COPD), stenosis, tension and migraine headaches, major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder (PTSD). (Doc. 8 at 104). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairment described in the Listing of Impairments 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Doc. 8 at 105).

The ALJ then found that Plaintiff had the residual functional capacity to perform light work with several limitations including:

> She is limited understanding, remembering, and carrying out simple instructions in a job that would not require more than simple work-related decisions and not having more than occasional changes in the routine work setting. She cannot perform high production rate work like an assembly line or work that would require a specific hourly quota, but she is capable of performing role-oriented work. She is limited to jobs that would require not more than occasional interaction with the public.

(Doc. 8 at 107-08). At step four, the ALJ found that Plaintiff had no past relevant work. (Doc. 8 at 114). At step five, the ALJ found based on the vocational expert's testimony that other jobs exist in significant numbers in the national economy that Plaintiff could perform, including work as a housekeeping cleaner, marker, and office helper. (Doc. 8 at 114-15).

Plaintiff argues the ALJ's decision is not supported by substantial evidence and raises two main issues on appeal. First, Plaintiff argues the ALJ did not provide clear and convincing reasons for discounting her subjective symptom testimony. Second, Plaintiff contends the ALJ failed to properly evaluate the medical evidence and, as a result, the residual functional capacity assessment does not adequately account for all of her limitations.

### A.    Subjective Symptom Testimony

Plaintiff argues the ALJ did not provide clear and convincing reasons for discounting her subjective testimony as to the severity of her symptoms and

limitations. The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

This standard requires the ALJ to "show [her] work" by providing a "rationale … clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)). In addition, the court is "constrained to review the reasons the ALJ asserts." *Brown-Hunter*, 806 F.3d at 492. This means the court "may not take

a general finding" by the ALJ "and comb the administrative record to find specific" evidence in support of that finding. *Brown-Hunter*, 806 F.3d at 494. Rather, the ALJ is responsible for identifying the testimony she finds not credible, and linking that testimony to the particular parts of the record supporting her determination. *Brown-Hunter*, 806 F.3d at 494.

Here, the ALJ found that Plaintiff met her initial burden because she produced evidence of medically determinable impairments that could reasonably be expected to cause the alleged symptoms. Accordingly, and because there is no evidence of malingering, the ALJ was required to provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony about the severity of her symptoms.

At her administrative hearing in January 2023, Plaintiff testified that she has emotional and mental health issues. (Doc. 8 at 129). She estimated that she has seven to ten bad days a month when she cannot get out of bed or do anything at all. (Doc. 8 at 129, 134). Plaintiff reported that she has "really bad anxiety with people" and has difficulty engaging with others. (Doc. 8 at 129, 130). She described having episodes during which she loses track of time and experiences visual and auditory hallucinations. (Doc. 8 at 129). Plaintiff explained that she has memory issues and her memory plays tricks on her. (Doc. 8 at 129, 133). Plaintiff testified that she suffers from depression and chronic fatigue which leave her tired

all the time and make it hard for her to do even simple things, like showering and brushing her teeth. (Doc. 8 at 130). Plaintiff stated that on an average day she drives her husband to and from work, takes a nap, and may do some housekeeping, go on errands, or attend medical appointments. (Doc. 8 at 130-32). Plaintiff additionally stated that on days she is really feeling good, she will take her dog for hikes on trails around Helena. (Doc. 8 at 131-32).

In August 2020, Plaintiff completed a function report stating that she has constant depression, and approximately once a month she "freeze[s] up for a few days" and cannot leave the house for a few days. (Doc. 8 at 310). She indicated that is afraid of the outside and people, that she does not talk to people at all unless her husband with her and often cannot leave the house without him. (Doc. 8 at 310). Plaintiff reported that she only goes outside maybe two or three times a month. (Doc. 8 at 313). Plaintiff stated that suffers from headaches due to spinal stenosis. (Doc. 8 at 312). She also stated that lung problems make physical activities difficult, and she has difficulty completing tasks due to memory, energy, and lung problems. (Doc. 8 at 315). She reported that on her bad days, she can only walk 30 feet at a time before needing to stop and rest for 2 to 10 minutes. (Doc. 8 at 315).

In June 2021, Plaintiff completed another function report describing similar symptoms and limitations. (Doc. 8 at 336-44). She reported that her fears

and anxieties cause her to shut down, and her depression sends her to bed for several days. (Doc. 8 at 336). She stated that she performs household chores according to her depression and anxiety cycle, for one half hour a day eight days a month, and that she only leaves the house about five times a month. (Doc. 8 at 339-40). Plaintiff reported that she is only able to walk for approximately 200 feet or so before needing to stop and rest for five minutes or so, and that her hobbies include reading and crocheting. (Doc. 8 at 341-42).

The ALJ summarized Plaintiff's testimony but discredited her statements at to the severity of her symptoms and limitations for several reasons. First, to the extent Plaintiff asserted she was unable to work due to her physical impairments, the ALJ found that her statements were not entirely consistent with the objective medical evidence. (Doc. 8 at 109). For instance, the ALJ noted that although Plaintiff complained of COPD symptoms, June 2020 examination notes indicated that a recent chest-X-ray was normal, and a physical exam showed that she had clear respiratory lung fields and was in no distress. (Doc. 8 at 109, citing Doc. 8 at 447). And contrary to Plaintiff's statements in her August 2020 function report that she had difficulty with physical activities due to lung problems, the ALJ observed that a July 2020 pulmonary function test found no airflow obstruction, no bronchodilator response, normal spirometry, low-normal total lung capacity, and normal resting ambient air oxygen saturation. (Doc. 8 at 109, citing Doc. 8 at 560).

In fact, the pulmonary function test cited by the ALJ showed "essentially normal lung function." (Doc. 8 at 560). The ALJ permissibly discounted Plaintiff's subjective symptom testimony in part based on inconsistencies between her complaints of lung problems and the medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's testimony.")

Second, turning to Plaintiff's mental impairments, the ALJ recognized that Plaintiff had a history of treatment for major depressive disorder, generalized anxiety disorder, and PTSD, but found her statements as to the severity of her symptoms and limitations were not supported by the mental status examination findings in the medical record. (Doc. 8 at 110-113). To support this reasoning, the ALJ cited medical records from January 2022 through August 2022 indicating that when Plaintiff presented to her primary care providers, she typically demonstrated grossly normal and appropriate mood, affect, memory, and insight. (Doc. 8 at 112-13, citing Doc. 8 at 698, 701, 707, 712). Medical records from 2020 and 2021 similarly reflect that Plaintiff routinely presented to her primary care providers with grossly normal mood, affect, memory, and insight. (Doc. 8 at 440, 447, 579, 596, 608, 617, 620). Although these primary care providers mainly addressed Plaintiff's physical impairments, the fact that they consistently found Plaintiff

11

presented with grossly normal mood, affect, memory, and insight undercuts

Plaintiff's testimony as to the daily severity of her depression and anxiety.

The ALJ also pointed to psychological examination findings from Plaintiff's

mental health care providers. For instance, the ALJ noted that at an appointment in

July 2021 to address her depression and anxiety, Plaintiff presented to her

physician with a depressed mood and affect but showed normal speech and

behavior, linear and direct thought processes, no abnormal associations, no

ideation or delusions, full orientation, intact memory, normal concentration,

language and fund of knowledge, and fair insight and judgment. (Doc. 8 at 112,

citing Doc. 8. at 670). The ALJ pointed to similar findings from appointments with

the same physician in January and May of 2022, which reflected that although

Plaintiff's mood and affect were depressed and she reported passive suicidal

thoughts at her January appointment, she had normal psychomotor behavior and

speech, linear and direct thought processes, no abnormal movements or

associations, no hallucinations or delusions, intact memory, was alert and oriented

to time, place, and person, and had normal concentration, language, and fund of

knowledge. (Doc. 8 at 112 citing Doc. 8 at 676, 679).

The ALJ reasonably found that the unremarkable mental status findings

described above were not entirely consistent with Plaintiffs' testimony that her

depression and anxiety was so severe that she rarely left the house, avoided others,

12

spent days at time in bed, had poor memory and concentration, had difficulty taking care of herself, and experienced auditory and visual hallucinations. The ALJ legitimately reasoned that that if Plaintiff's mental impairments were as limiting as she claimed, even routine mental status findings would have reflected more significant problems.

Third, the ALJ discounted Plaintiff's symptom testimony on the ground that her "own activities and self-reports do not establish that she is as limited as alleged." (Doc. 8 at 109). An ALJ may discount a claimant's testimony based on daily activities that either contradict her testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). *See also*, *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

Here, the ALJ legitimately found that some of Plaintiff's reported activities were not entirely consistent with her allegations of disabling physical and mental symptoms. For example, the ALJ recognized that Plaintiff testified at length about isolating at home and avoiding social interactions, but noted she appeared "to get along well with others and reported that she had several social interactions especially at times when she was providing care to her partner who was going though some substance abuse issues." (Doc. 8 at 111, 112, citing Doc. 8 at 626-

37). The treatment notes cited by the ALJ reflect, among things, that after her partner spent 18 days in the hospital in the fall of 2020, Plaintiff was "socialized out, case managed out," had experienced disrespect from nurses "but worked through it," and was glad to be back home because she had "[e]nough people exposure for a year." (Doc. 8 at 630).  Additionally, while Plaintiff alleged problems with concentration (Doc. 8 at 315, 342), the ALJ noted that her activities included crocheting, reading, and writing stories. (Doc. 8 at 110, 314, 341, 631).

Overall, the Court finds that the provided at least one specific, clear and convincing reason for discounting Plaintiff's symptom testimony. *See Joshua P. v. Kijakazi*, 2021 WL 4330858, at *3 (D. Or. Sept. 23, 2021) ("To avoid committing harmful error, an ALJ must provide only one clear and convincing reason, supported by substantial evidence, for discounting a claimant's symptom testimony.")

### B.    **Medical Opinion Evidence**

Plaintiff argues the ALJ failed to proper weight to medical opinion evidence provided by Grace Hodges, a Licensed Clinical Professional Counselor ("LCPC") who has provided mental health treatment for Plaintiff since August 2019. (Doc. 8 at 565).

For all claims filed after March 27, 2017, the Social Security Administration has amended the rules regarding the evaluation of medical opinion evidence at the

administrative level. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Because Plaintiff filed her claim for disability benefits in June 2020, the amended regulations apply in this case.

The amended regulations do away with the traditional hierarchy between treating, examining, and non-examining physicians, and instead direct the ALJ to consider all medical opinions and prior administrative medical findings, and evaluate their persuasiveness using several listed factors. 20 C.F.R. §§ 404.1520c(a), 416.920(a). Those factors include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c), 416.920(c). The two most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920(a).

While the new regulations eliminate the hierarchy between treating, examining, and non-examining medical sources, the ALJ must still provide legally sufficient reasons supported by substantial evidence for finding a medical opinion unpersuasive. See *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. Apr. 2022) (even under the new regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence"); *Beason v. Saul*, 2020 WL 606760, *3 (C.D. Cal. Feb. 7, 2020). The "new regulations still require the ALJ to explain his or her reasoning to

15

specifically address how he or she considered the supportability and consistency of the medical opinion." *Brandee M.*, 2021 WL 2781803, at *3 (citing 20 C.F.R. §§ 404.1520c, 416.920c). While the ALJ must explain how she considered the supportability and consistency factors in the decision, the ALJ is not generally required to explain how she considered the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920(b)(2).

Under the revised regulations, "[a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in performing specific workplace activities. 20 C.F.R. §§ 404.1513(a)(2), 416. 913(a)(2). A medical source "means an individual who is licensed as a healthcare worker by a States …." 20 C.F.R. §§ 404.1502(d), 416.902(i). Because professional counselors are mental health professionals that require licensure under Montana law, Hodges is a medical source within the meaning of the regulations. *See Welty v. Kijakazi*, 2023 WL 2495895, at *6 (D. Mont. Mar. 14, 2023).

Hodges wrote three letters in support of Plaintiff's application for disability benefits accompanied by her handwritten treatment notes. (Doc. 8 at 564-577 (August 2020 letter and records); Doc. 8 at 625-37 (June 2021 letter and records); Doc. 8 at 644-59 (December 2021 letter and records)). As the Commissioner correctly points out, Hodges's letters do not identify any specific functional

limitations or restrictions as required to fit the regulatory definition of a medical opinion. (Doc. 8 at 564, 625, 644-45). *See e.g. Donald L. v. Comm'r,* 2023 WL 4761537, at *3 (W.D. Wash. July 26, 2023) (finding that although letters written by the plaintiff's doctor included the plaintiff's medical history and described his symptoms, they were not medical opinions under the regulations because the did not identify any specific functional limitations). But even assuming Hodges' letters are properly characterized as medical opinions, the ALJ adequately addressed supportability and consistency, and provided sufficient reasons supported by substantial evidence for finding the letters unpersuasive.

In her August 2020 letter, Hodges explained that Plaintiff's PTSD, depression, and anxiety disorder caused debilitating exhaustion, significantly impaired her ability to concentrate and process information, and resulted in a sense of isolation and disconnection. (Doc. 8 at 564). Hodges stated that in her opinion, Plaintiff was no longer able to support herself through employment. (Doc. 8 at 564). To the extent Hodges stated that Plaintiff was unable to work, her letter addressed an issue that is reserved to the Commissioner and is not a medical opinion. 20 C.F.R. §§ 404.1527(d), 416.927(d). As to supportability, the ALJ noted that Hodges' treatment notes mainly documented Plaintiff's reported symptoms and life experiences, but did not include any significant findings such as detailed mental status examinations to support her conclusion that Plaintiff is disabled.

(Doc. 8 at 110). The treatment notes submitted with Hodges' letter date back to their first appointment in August 2019, and chronicle sessions during which Plaintiff provided personal background, described her ongoing mental health issues, and reported symptoms including chronic fatigue and exhaustion (Doc. 8 at 567, 568, 569, 572, 573, 574), social isolation (Doc. 8 at 567, 569), mental fog (Doc. 8 at 572), and derealization (Doc. 8 at 573). There is no indication that Hodges performed any mental status examinations, however, and did she did not include any specific clinical findings or observations in her treatment notes. (Doc. 8 at 565-77). The ALJ appropriately cited the lack of mental status exam findings when assessing supportability.

As to consistency, the ALJ found that Hodges' opinion as to the disabling severity of Plaintiff's symptoms was not consistent with mental status examinations performed by other health care providers at around the time of Hodges' letter. (Doc. 8 at 111). Consistent with the ALJ's reasoning, in June and August 2020, Plaintiff's primary care provider found that her mood, affect, memory, and insight were grossly normal. (Doc. 8 at 440, 447, 579). The ALJ also cited an August 2020 mental health assessment by a nurse practitioner, who diagnosed Plaintiff with PTSD and a "mild episode of recurrent major depressive disorder," refilled her anti-depressant medications, and encouraged her to continue with therapy. (Doc 8 at 111, 582). The ALJ reasonably found that this assessment,

18

including particularly a mild episode of recurrent major depressive disorder, was not entirely consistent with Hodges' stated opinion that Plaintiffs' mental health symptoms were so severe that she was unable to work.

The ALJ also addressed the letters that Hodges wrote in June and December of 2021, and found them unpersuasive for essentially the same reasons. (Doc. 8 at 111-12). The two letters are substantially the same. In both letters, Hodges stated that Plaintiff's ability to concentrate and process information was "significantly impaired" and "her levels of fatigue and overwhelm are chronically severe." (Doc. 8 at 625, 645). As in her first letter, Hodges again wrote that Plaintiff was "not able to support herself through employment." (Doc. 8 at 625, 645).

The ALJ again explained that Hodges' statements were not supported by her own treatment notes, which extensively addressed Plaintiff's family issues and circumstances, but were not consistent with other treatment records and mental status examination findings from around the same time. (Doc. 8 at 111-12). Consistent with the ALJ's reasoning, mental status examination findings in July 2021 and January 2022 were mostly normal and were not indicative of the level of impairment noted by Hodges. (Doc. 8 at 670, 676). For instance, although Hodges stated that Plaintiff's ability to concentrate was significantly impaired, those mental status examination findings showed "normal concentration." (Doc. 8 at 670, 676).  Having reviewed the record, the Court finds that the ALJ adequately

19

addressed supportability and consistency, and her reasoning is supported by substantial evidence.

To the extent Plaintiff argues the ALJ erred by discounting Hodges' opinions because they were based on Plaintiff's self-reports, the record shows otherwise. Although the ALJ observed that much of the evidence provided to Hodges came in the form of Plaintiff's self-reports during their counseling sessions (Doc. 8 at 110), as explained above the ALJ appropriately relied on the lack of clinical findings and inconsistencies in the record when evaluating the supportability and consistency of Hodges' opinions. Additionally, while a mental health provider's "*partial reliance*" on a claimant's self-reported symptoms is not a legitimate reason to reject the opinion, an ALJ may discount an "opinion of disability premised to a *large extent* upon the claimant's own accounts of [her] symptoms and limitations. *Buck v. Berryhill*, 869 F.3d 1014, 1049 (9th Cir. 2017) (citation omitted, emphasis added). Here, the ALJ legitimately noted that Hodges' treatment records were based "mostly [on] self-reports" by Plaintiff. (Doc. 8, at 110).

Plaintiff argues the ALJ overlooked a statement by Hodges that Plaintiff's symptoms wax and wane, and asserts that the ALJ cherry-picked favorable evidence to deny her benefits. (Doc. 10 at 26, 29). Neither of these arguments is persuasive. The ALJ provided a detailed summary of the medical evidence, which

recognized that Plaintiff's activities and mental health symptoms were at times variable. The ALJ agreed at step two that Plaintiff had severe mental and physical impairments and then accounted for those impairments in the residual functional capacity assessment. (Doc. 8 at 104, 107).

In assessing Plaintiff's residual functional capacity, the ALJ relied in part on the prior administrative state agency consultants, who found that Plaintiff had mild difficulty with social interaction, and moderate difficulty with concentration, persistence and pace. (Doc. 8 at 113, 150-157; 160-169). There are no other mental or physical capacity assessments in the record. Although the medical consultants found that Plaintiff had no limitation in understanding, remembering, and applying information and was physically capable of medium work, the ALJ gave Plaintiff the benefit of the doubt and found she had mild limitations in understanding, remembering, and applying information and limited her to light rather than medium work. (Doc. 8 at 111). The ALJ included several non-exertional limitations to account for her mental impairments, such as limiting her to no more than occasional interaction with the public and work that would not require more than simple decisions and occasional changes in routine. (Doc. 8 at 107).

The ALJ is responsible for weighing the medical opinions in the record and resolving any conflicts in the medical evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Even if the record could support a different result, the

Court must affirm the ALJ's findings if they are supported by substantial evidence. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) ("[W]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

As explained above, the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective testimony as to the debilitating severity of her symptoms, and appropriately evaluated the medical evidence. Accordingly, the residual functional capacity assessment is supported by substantial evidence, and Plaintiff has not shown that the ALJ erred by not incorporating additional limitations.

**IV.    Conclusion**

For the reasons discussed above, the Court finds the ALJ's decision denying Plaintiff's claim for supplemental security income benefits is supported by substantial evidence and free of prejudicial legal error. Accordingly,

IT IS ORDERED that the Commissioner's decision is AFFIRMED.

DATED this 18th day of February, 2025.

Kathleen L. DeSoto
United States Magistrate Judge